# In the United States Court of Federal Claims

No. 19-55C

(E-filed **UNDER SEAL**: September 30, 2019)[1]

|  |  |  |
|---|---|---|
| ANHAM FZCO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | Motion for Contempt. |
| Defendant, | ) ) | |
| and | ) ) | |
| KGL FOOD SERVICES WLL, | ) ) | |
| Intervenor-Defendant. | ) ) | |

Kelly E. Buroker, Washington, DC, for plaintiff.

Daniel S. Herzfeld, Trial Attorney, with whom appeared Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Daniel K. Poling, R. Zen Schaper, Gale Furman, and Cathleen Choromanski, Defense Logistics Agency, of counsel.

John E. McCarthy, Jr., Washington, DC, for intervenor-defendant.

OPINION

---

[1] This opinion was issued under seal on September 13, 2019.  Pursuant to ¶ 3 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

CAMPBELL-SMITH, Judge.

Plaintiff filed this bid protest to challenge the award of a contract for the provision of "food distribution services in support of U.S. troops and other personnel in" Iraq, Jordan, and Kuwait. ECF No. 147 at 1 (second amended complaint). On August 29, 2019, the court granted plaintiff's request for a permanent injunction against continuing with transition activities and performance under the contract at issue in this case. ECF No. 182 at 35. On September 6, 2019, plaintiff filed a motion for contempt and a motion for entry of a temporary restraining order, in which it alleges that defendant is presently violating this injunction. See ECF No. 185. The court ordered expedited briefing of plaintiff's motions. See ECF No. 186. Defendant filed its response on September 10, 2019, see ECF No. 187, and plaintiff filed its reply on September 12, 2019, see ECF No. 188. For the follow reasons, plaintiff's motions are **DENIED**.

I.  Background[2]

On August 29, 2019, the court granted plaintiff's request for a permanent injunction in the following terms:

> The United States, by and through the Defense Logistics Agency, its officers, agents, and employees, is hereby **PERMANENTLY RESTRAINED AND ENJOINED** from continuing with transition activities and from obtaining performance from KGL Food Services, WLL, under Contract Number SPE300-18-D-4032, except to the extent that such activities are required under a bridge contract or other solution designed to ensure the continuous availability of the supplies or services provided for under the contract.

ECF No. 182 at 35.

In its motion, plaintiff alleges the following facts. After receiving the court's opinion, plaintiff's counsel contacted defendant's counsel and was advised that the agency was "[s]till assessing" its path forward. See ECF No. 185 at 3 (citing to ECF No. 185-1 at 7, an August 29, 2019 email from the contracting officer). Also in immediate response to the court's opinion, plaintiff "halted transfer of additional stock" to intervenor-defendant. Id. The following day, on August 30, 2019, plaintiff notified the agency that it remained ready to perform. Id. In response, also on August 30, 2019, the agency instructed plaintiff to reinstate stock transfers, explaining as follows:

---

[2]   The court explained the solicitation, evaluations, and contract awards at length in its recent opinion on the merits of plaintiff's protest action. See ECF No. 182. In the interest of focusing on the new issues before the court, the discussion is not repeated in this opinion.

2

> The DLA Troop Support Contracting Officer has been made aware that, given the court's August 29, 2019 decision, ANHAM voluntarily halted its stock transfer operations with KGL by refusing to load five (5) trucks worth of subsistence product during a routine load-out. ANHAM's failure to transfer this stock goes against ANHAM's existing obligation to KGL and DLA to ensure that these items are made available for customers to order. These actions have led to an increased number of Not in Stock (NIS) items and have affected holiday support, to include the Air Force's Birthday. The DLA Troop Support Contracting Officer has also been made aware that ANHAM has refused to transfer Government Furnished Material (GFM) to KGL, specifically Operational Rations. DLA Troop Support believe these actions are inconsistent with ANHAM's requirements under its SPY IJK contract and may jeopardize customer support and the mission in the region.
>
> Given the above, ANHAM must immediately resume operations under its current SPV IJK Contract, to include any remaining stock transfers with KGL, in order to ensure uninterrupted support to customers within this [area of responsibility]. Failure to do so may reflect negatively on ANHAM's performance under its contract and result in an unfavorable performance rating in Contractor Performance Assessment Rating (CPARS) for this performance period.

ECF No. 185-1 at 11.

Upon receipt of the letter, plaintiff unsuccessfully attempted to contact the contracting officer, and then sent a letter to defendant stating that "[i]f you are advising us that this turnover of materials is required pursuant to the interim provision of the Injunction to avoid any disruption in service, we will immediately turnover that product based upon that instruction." Id. at 14.  Plaintiff also informed defendant that "to the extent that DLA's direction are intended to continue the transition to KGL **for anything other than a very short period to facilitate the transition back to ANHAM**, we must firmly advise that, in our opinion, such action is also contrary to the letter and spirit of the Court's Order and Injunction." Id. at 15.

Plaintiff spoke with the contracting officer on September 3, 2019, and states that it was advised that "it was 'business as usual' until further notice." ECF No. 185 at 4 (citing ECF No. 185-1 at 4).  On September 4, 2019, the contracting officer informed plaintiff that the agency was "still assessing the issue with counsel and the Department of Justice." Id.  Also on September 4, 2019, plaintiff "was informed by its industry contracts that KGLFS has continued to place orders for prime vendor stock after the Court issued its injunction." Id.

3

Plaintiff also represented to the court as follows:

> Additionally, on September 1, 2019, a KGL affiliate made a disclosure to the Kuwaiti Stock Exchange, pursuant to Kuwaiti law, notifying the exchange that despite the Court's decision, DLA "is hereby, obligated to permanently continue in the transitional activities and to get the services from KGL Food Services Co. (an affiliate) under the main supplier contract."

Id.  A translation of the disclosure is attached as an exhibit to plaintiff's motion.  See ECF No. 185-1 at 18.

In response, defendant denied any violation of the court's injunction, and explained the steps it has taken in light of the same.  See ECF No. 188.  One week after the injunction was issued, "[o]n September 6, 2019, DLA issued the [justification and approval (J&A)] proposing a bridge contract for a four month base period and two, three-month option periods to assure continued service until DLA could make a new award determination."  ECF No. 188 at 3.  The agency determined that intervenor-defendant "was the only source that could perform for the term of the short bridge contract," and explained its decision at length in the J&A document.  Id. at 4, 13-21.  Defendant also notes:

> The J&A includes approval for a short-term bridge contract to allow for DLA to take corrective action and make a new award determination:  "The period of KGL's continued performance will provide necessary SPV coverage and afford DLA adequate time to take corrective action in response to the recent [Court of Federal Claims] decision, which may include the ramp down of KGL and transition to another offeror should another offeror receive the award."

Id. at 5 (quoting id. at 18).  The agency and intervenor-defendant entered into a bridge contract on September 10, 2019, and on the same day the agency "finalized its corrective action plan."  Id.

II.     Legal Standards

To establish contempt, plaintiff must demonstrate, by clear and convincing evidence, that: "(1) the offending party violated an order of the court; (2) the violation was more than de minimis or technical noncompliance; and (3) the conduct was not the product of a good faith or reasonable interpretation of the order."  Navajo Nation v. Peabody Coal Co., 7 F. App'x 951, 955 (Fed. Cir. 2001).  The "court cannot hold a party in contempt if there is a 'fair ground of doubt as to the wrongfulness of the [party's] actions.'"  Id. (quoting Preemption Devices, Inc. v. Minn. Mining & Mfg. Co., 803 F.2d 1170, 1173 (Fed. Cir. 1986)).

III.   Analysis

As plaintiff correctly notes in its reply, the injunction entered by this court required that "all transition efforts under the illegally-awarded contract were to cease except under some narrowly-defined exceptions." ECF No. 189 at 4.  Those narrowly-defined exceptions specifically permitted the agency to continue its transition and performance activities "to the extent that such activities are required under a bridge contract or other solution designed to ensure the continuous availability of the supplies or services provided for under the contract." ECF No. 182 at 35.  Plaintiff has failed to show that the agency strayed from these exceptions.[3]

In its motion for contempt, plaintiff complains that the agency required plaintiff to perform under its incumbent contract, which included facilitating stock transfers to intervenor-defendant, while the agency assessed its options for complying with the court's injunction.  Defendant's August 30, 2019 letter demonstrates, however, that the agency considered plaintiff's continued performance under the incumbent contract as necessary to "customer support and the mission of the region." ECF No. 185-1 at 11.  This is precisely the concern that the court took care to acknowledge the importance of—and explicitly allow for the defendant to address—in the language of its injunction.  See ECF No. 182 at 35 (enjoining transition activities and performance "except to the extent that such activities are required under a bridge contract or other solution designed to ensure the continuous availability of the supplies or services provided for under the contract").

Moreover, defendant moved expeditiously to formalize an interim arrangement for the needed supplies and services.  It issued a detailed J&A within one week of the court's opinion.  See ECF No. 188 at 13-21 (J&A dated September 6, 2019).  And in less than two weeks, the agency had entered into a bridge contract and finalized a corrective action plan.  See id. at 22-37 (bridge contract dated September 10, 2019); id. at 38-39 (corrective action plan dated September 10, 2019).  Plaintiff has presented no convincing evidence that defendant unduly delayed its response to the court's opinion.

The court understands plaintiff's disappointment that it was not awarded the bridge contract.  The court's injunction, however, did not include any such requirement.  To the extent that plaintiff has filed its motions in an attempt to challenge the bridge contract award to intervenor-defendant, its challenge is misplaced.  In order to mount a new challenge to a new contract award, plaintiff must file a new bid protest action.  As

---

[3]   The court notes that plaintiff's motion includes several details about intervenor-defendant's actions since the time that the court issued its opinion.  See ECF No. 185 at 4.  The court's injunction did not restrict, or even address, any action on intervenor-defendant's part.  As such, its actions are irrelevant to the issue of whether defendant violated the court's injunction.

such, the court will not review the merit of defendant's bridge contract award decision as part of this case.

Plaintiff has failed to demonstrate, by clear and convincing evidence, that defendant violated the court's injunction. As such, plaintiff's motion for contempt must be denied. In addition, because plaintiff's motion for entry of a temporary restraining order was predicated on plaintiff's unsuccessful assertion that defendant is in violation of the court's injunction, see ECF No. 185 at 9, it is denied as moot.

IV.   Conclusion

Accordingly,

(1)   Plaintiff's motion for contempt, ECF No. 185, is **DENIED**;

(2)   Plaintiff's motion for entry of a temporary restraining order, ECF No. 185, is **DENIED** as moot;

(3)   On or before **September 27, 2019**, counsel for the parties shall **CONFER** and **FILE** a **notice** of filing, attaching a proposed redacted version of this opinion, with any material deemed proprietary blacked out, so that a copy of the opinion can then be made available in the public record of this matter.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge